# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ALLEN AND EVELYN MCKISSIC,

      Plaintiffs,

vs.                                                                    CASE NO.  8:07-cv-1488-T-17EAJ

COUNTRY COACH, INC. and
LAZY DAYS RV CENTER, INC.

      Defendants.

_____/

## ORDER ON DEFENDANTS' PENDING MOTIONS

      This cause comes before the Court on two motions for summary judgment:  Defendant,

Lazy Days R.V. Center, Inc.'s, Motion for Summary Judgment filed July 15, 2008 (Dkt. 84);

Defendant, Country Coach, Inc.'s, Motion for Summary Judgment filed July 31, 2008 (Dkt. 93);[1]

and Plaintiffs' Response and Authority in Opposition thereto (Dkt. 103).  Also before the Court

are Defendants' Objection to Plaintiff's Unauthenticated/Hearsay Exhibits filed October 7, 2008

(Dkt. 105), Defendants' Motion to Strike Plaintiff's Belated Unauthenticated "Draft" Report

from Non-disclosed Expert filed October 9, 2008 (Dkt. 108), Defendants' Motion to Strike

Plaintiff's Belated and Improper "Notice of Filing" on 8/9/08 filed October 9, 2008 (Dkt. 110),

and Defendants' Motion to Strike Plaintiff's Belated and Improper "Notice of Filing" on

10/10/08 2008 (Dkt. 112).  No responses were filed as to these motions.

      For reasons set forth below, the Defendants' motion for summary judgment should be

---

[1]Defendants also filed a notice of supplemental authority on October 7, 2008 (Dkt. 102).

GRANTED in favor of Lazy Days R.V. Center, Inc. and GRANTED in favor of Country Coach, Inc., Defendants' Objections are SUSTAINED and Defendants' Motions to Strike are GRANTED.

## BACKGROUND

On or about March 17, 2002, Plaintiffs contracted to purchase a used 2002 Country Coach, Inc. (hereafter "Manufacturer") recreational vehicle (hereafter "RV") from Lazy Days, Inc. ("Lazy Days") for approximately $311,900.00. Lazy Days is authorized by Country Coach to sell Country Coach RVs. Plaintiffs' purchase of the vehicle from Lazy Days was memorialized in a written Buyer's Order. In paragraph nine on the back of the Buyer's Order, Lazy Days excludes all warranties:

> EXCLUSION OF WARRANTIES. I UNDERSTAND THAT THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, ARE EXCLUDED BY YOU FROM THIS TRANSACTION AND SHALL NOT APPLY TO THE GOODS SOLD. I UNDERSTAND THAT THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF REGARDING THE UNIT OR ANY APPLIANCE OR COMPONENT WHICH IS A PART OF THE UNIT OR THIS SALE.

Further, paragraph eleven states:

> MANUFACTURERS WARRANTIES. MECHANICAL PROBLEMS MAY ARISE WITH ANY VEHICLE. I UNDERSTAND THAT THERE MAY BE WRITTEN WARRANTIES COVERING THE UNIT PURCHASE, OR ANY APPLIANCE(S) OR THE COMPONENT(S), SUCH AS THOSE WHICH HAVE BEEN PROVIDED BY THE MANUFACTURERS OF THE UNIT, THE APPLIANCE(S) OR THE COMPONENT(S). I UNDERSTAND THAT THE WARRANTY OR WARRANTIES I RECEIVED AT THE TIME OF SALE ARE MY EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS THAT I MIGHT HAVE WITH THE UNIT OR ANY APPLIANCE(S) OR COMPONENT(S). I AGREE THAT NO OTHER REMEDIES ARE AVAILABLE TO ME, INCLUDING BUT NOT LIMITED TO, REVOCATION OF ACCEPTANCE AND RESCISSION.

Defendant Manufacturer, Country Coach, disclaims responsibility for consequential and

incidental damages on the back side of warranty document separate from the Buyer's orders.

This COUNTRY COACH HOUSE/COACH LIMITED WARRANTY states on the back:

> CONSEQUENTIAL DAMAGES
> Without regard to the alleged defect, Country Coach does not assume under any circumstances any responsibility for any consequential or incidental damages resulting from a defect in the motorhome, including without limitation, loss of time, loss of revenue, inconvenience expense for fuel, telephone or other communication charges, towing or service calls, rental vehicles, travel, meals, lodging, loss or damage to personal property, personal injury or emotional distress. Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation may not apply to you.

The date of the first retail purchase of the RV, by a previous owner, occurred on April 25, 2001. (A. McKissic depo. P.75, L. 25, P. 76, L. 1-5; Exhibit 3; Affidavit of W. Williams). Upon purchasing the vehicle used on March 17, 2002, Plaintiffs received the COUNTRY COACH HOUSE/COACH LIMITED WARRANTY with their purchase of this used RV. (A. McKissic depo., P. 75, L. 9-15). Such Manufacturer's warranty states on its face:

> WARRANTY PERIOD
> Except as provided under the Structural Warranty described immediately below, the term of this limited warranty is 12 months from the date the motorhome is delivered to the first retail purchaser. Warranty repairs do not extend the warranty term for the house/coach portion of the motorhome or for any specific part, component or system.

(Dkt. 86, Ex. 8). Further, the backside of the Manufacuter's warranty states:

> COUNTRY COACH RESPONSIBILITY
> Upon notice of the defect, any part of the motorhome subject to this limited warranty which is found to be defective in material or workmanship will be repaired or replaced, at Country Coach's option, without charge to the owner for parts or labor. For the purpose of this limited warranty, a part is not defective in material or workmanship if it performs substantially within the design specifications for the part.

(Dkt. 86, Ex. 8). Thus, by its express terms, the twelve month COUNTRY COACH HOUSE/COACH LIMITED WARRANTY coverage began on April 25, 2001, and expired on April 24, 2002. (Dkt. 95, Affidavit of W. Williams, paragraph 4). This left the Plaintiffs with

thirty-nine days of such warranty coverage.  (Dkt. 86, A. McKissic depo., P. 76, L. 6-9; Affidavit of W. Williams, paragraph 5).  The two defect concerns (slide room leaks and water leakage/mold) alleged by Plaintiffs' complaint, were not reported by Plaintiffs until after the April 24, 2002, expiration of the "COUNTRY COACH HOUSE/COACH LIMITED WARRANTY." (Dkt. 95, Affidavit of W. Williams, paragraph 6).

On August 21, 2007, Plaintiffs filed a complaint (Dkt. 2) containing the following claims against Lazy Days: Breach of Implied Warranties by Dealer under the UCC (Count I); Breach of Express Warranties by Dealer under the UCC (Count II); Breach of Express Warranties by Dealer under Magnuson-Moss (Count III); Breach of Implied Warranties by Dealer under Magnuson-Moss (Count IV); Revocation of Acceptance against Dealer (Count V); and Deceptive and Unfair Trade Practices by Dealer (Count VI).  Judgment was granted on Counts I-IV and VI in favor of the Lazy Days on July 16, 2008, in this Court's Order on Defendant's Motion for Reconsideration (Dkt. 88).  Revocation of Acceptance against Dealer (Count V) is the only remaining count at issue in Defendant, Lazy Days', Motion for Summary Judgment (Dkt. 84).

Plaintiffs' complaint further alleged claims against Manufacturer for: Breach of Express Warranties by Manufacturer under the UCC (Count VII): Breach of Implied Warranties by Manufacturer under the UCC (Count VIII); Breach of Express Warranties by Manufacturer under Magnuson-Moss (Count IX); and Breach of Implied Warranties by Manufacturer under Magnuson-Moss (Count X).  Judgment was granted on Counts VIII and X  in favor of the Defendant Manufacturer on March 3, 2008, in this Court's Order on Motion to Dismiss, leaving only Breach of Express Warranties by Manufacturer under the UCC (Count VII) and Magnuson-Moss (Count IX) at issue for Defendant Manufacturer's Motion for Summary Judgment.

On July 15, 2008, Lazy Days filed a Motion for Summary Judgment (Dkt. 84) with respect to the remaining count. Defendant Manufacturer also filed a Motion for Summary Judgment on July 31, 2008 (Dkt. 93) with respect to the remaining two counts. Plaintiffs responded in opposition to both of Defendants' Motions for Summary Judgment on October 7, 2008 (Dkt. 103, Dkt. 104). Defendants objected (Dkt. 105) to Plaintiffs' inclusion of alleged unauthenticated/hearsay exhibits (Dkt. 103-5) attached to Plaintiffs' response. Plaintiffs also filed an Inspection Report on October 8, 2008 (Dkt. 107-2) and October 9, 2008 (Dkt. 109-2). Defendants' filed a Motion to Strike this Inspection Report on October 9, 2008 (Dkt. 108, Dkt. 109). Defendants again filed a further Motion to Strike this Inspection report on October 10, 2008, in response to Plaintiffs' failed attempt at filing an amended Inspection report that included a signature where the previous Inspection reports had not been signed (Dkt. 111-2).

## STANDARD OF REVIEW

Summary judgment is appropriate when the facts properly supported by the record and taken in the light most favorable to the non-moving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's

evidence.  *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962).  "The opposing party must counter the moving party's affidavits with opposing affidavits or other competent evidence setting forth specific facts to show that there is a genuine issue of material fact for trial."  *United States v. An Article of Drug*, 725 F.2d 976, 984-985 (5th Cir. 1984).  The opposing evidence must be based on admissible evidence of facts and may not be based upon conclusory allegations.  *Bloodsworth v. Smith & Nephew, Inc.*, 476 F. Supp. 2d 1348, 1350 (M.D. Ala. 2006) (quoting *Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)).  Once the movant meets the initial burden of demonstrating the absence of a genuine issue of material fact, summary judgment is appropriate if the non-movant fails to make a showing to establish the existence of an element essential to its case, which it has the burden of proof at trial.  *Celotex*, 477 U.S. at 322.  The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.

**DISCUSSION**

Although Plaintiff Evelyn McKissic died on September 19, 2007 [A. McKissic depo. P. 20, L. 8-13], Plaintiffs have not filed any motion for substitution pursuant to Federal Rule of Civil Procedure 25(a).  However, in recognition of the possibility of substitution under this rule, this Court will continue to acknowledge two Plaintiffs within this case and accordingly refer to Plaintiffs in the plural.

**I.     Defendants' Objection to Unauthenticated/Hearsay Exhibits**

In support of Plaintiffs' Response and Incorporated Authority in Opposition to Lazy Days' Motion for Summary Judgment (Dkt. 104), on October 7, 2008, Plaintiffs submitted an attached letter and report (mold documentation) from McGregor Pearce, MPH, an Environmental

Health Consultant (Dkt 103-5), dated June 21, 2006. Defendants object to this mold documentation on the grounds that the such documents are unauthenticated hearsay. This Court recognizes that for a document "to be considered for or against summary judgment, [it] must be authenticated, either by an affidavit that meets the requirements of Rule 56(e), Federal Rules of Civil Procedure, or in accord with the Federal Rules of Evidence." *XPEDX v. Wells*, 2007 U.S. Dist. LEXIS 67000, *5 (M.D. Fla. Sept. 11, 2007) (citing *Williams v. Eckerd Family Youth Alternative*, 908 F. Supp. 908, 911 (M.D. Fla. 1995)). The Plaintiffs' mold documentation (Dkt. 103-5) is neither sworn nor certified, and, therefore, lacks any authenticating affidavit attachment. Thus, Plaintiffs' mold documentation (Dkt. 103-5) fails to meet the requirements of Civ. P. 56(e).

Further, Federal Rules of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Plaintiffs have offered no foundation or further evidence to support that the disputed mold documentation is what the Plaintiffs claim it to be. While the document's author is identified as individual by the name of Mac Pearce, there is no evidence of his signature on the face of the document.

The Court also fails to accept the mold documentation under one of the Hearsay Exceptions to the Federal Rules of Evidence. Specifically, although the mold documentation potentially qualifies under Fed. R. Evid. 803(6) (the Business records exception), this rule requires that the mold documentation be "shown by custodian or other qualified witness, or certification that complies with Rules 902(11) or 902(12), or statute." To be admissible, Fed. R. Evid. 902(11) requires the Mold documentation at issue to be:

> [A]ccompanied by written declaration or qualified person certifying the record in manner stated in a manner complying with Any act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record:
>
>> (A) was made at or near the time of the occurrence of the matters set forth by, or from information by, a person with knowledge of those matters;
>>
>> (B) was kept in the course of regularly conducted activity; and
>>
>> (C) was made by the regularly conducted activity as a regular practice
>
> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Because the mold documentation lacks a signature and proper certification as set forth in Fed. R. Evid. 902(11), the Court will not consider the mold documentation in reviewing the Defendants' Motion for Summary Judgment.[2]

Defendants also argue that the mold documentation filed by the Plaintiffs as "expert" evidence, is barred by Fed. R. Civ. P. 37(c) for failure to conform with the parties' Case Management Report service under Fed. R. Civ. P. 26(a)(2) expert disclosure report. In light of the Court's above analysis and finding that Plaintiffs' mold documentation will not be considered for Defendants' motions for summary judgment, such issues will not be addressed.

Defendants' objection to unauthenticated/hearsay exhibits is SUSTAINED.

## II.    Defendants' Motion to Strike

In support of Plaintiffs' Response and Incorporated Authority in Opposition to Defendants' Motions for Summary Judgment (Plaintiff's Response), Plaintiffs have submitted a October 8, 2008 "Draft" Inspection Report (Inspection Report) (Dkt. 107-2, 109-2). Defendants have filed a motion to strike this Inspection Report on the grounds that such report does not meet

---

[2]Fed. R. Evid. 902(12) also mentioned within the Business records exception in 803(6), is not applicable as it only applies to "foreign" records.

the admissibility criteria of Fed. R. Civ. P. 56(e) or the Federal Rules of Evidence.

The Court notes that although Defendants have filed the motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, "Rule 12(f) only applies to matters within the pleadings." *Jordan v. Cobb County, Georgia*, 227 F. Supp. 2d 1322, 1346 (N.D.Ga. 2001). Thus, this Court will consider Defendants' arguments as objections to the materials attached to Plaintiffs' Response. *See Sklar v. Clough*, No. 1:06-CV-0627-JOF, 2007 WL 2049698, at *1 (N.D. Ga. July 6, 2007); *XPEDX*, 2007 U.S. Dist. LEXIS 67000, at *4 .

While the Court recognizes that it "should give credence to evidence favoring the non-movant as well as uncontradicted and unimpeached evidence from disinterested witnesses that supports the moving party," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S. Ct. 2097, 2110, 147 L.Ed.2d 105 (2000), "inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). The Plaintiff's Inspection Report contains no attached affidavit verifying its authenticity, states "DRAFT REPORT ONLY" on its face, and contains no author's signature. Although the Inspection Report does identify W. Jay Zembower CMAT/CTT as the author, this document suffers from insufficient evidence to authenticate this author. For these reasons, the Inspection Report fails to meet the Requirements of Fed. R. Civ. P. 56(e).

In considering whether the Inspection report survives admissibility under the Federal Rules of Evidence, the Court finds that it does not. Under the analysis of evidence admissibility set forth above for the Business records exception and Fed. R. Evid. 902(11), the Court finds that because the Inspection Report is unsigned and lacks accompaniment by "written declaration or qualified person certifying the record . . . " this evidence is inadmissible. For these reasons, the Court will not consider the Inspection Report in reviewing the Defendants' motion for summary

judgment.

Similar to Defendants' argument to exclude the mold documentation for reasons of Plaintiffs' failure to conform with the parties' Case Management Report, Defendants also argue that Fed. R. Civ. P. 37 (c)(1) precludes admission of Plaintiffs' Inspection Report. However, due to the Court's above analysis and finding that the Inspection Report will not be considered for Defendants' motion for summary judgment, such issues will not be addressed.

Defendants' objections to the Inspection report are SUSTAINED. Accordingly, Defendants' Motions to Strike Plaintiffs' Unauthenticated "Draft" report are GRANTED.

## III. Lazy Days' (Dealer) Motion for Summary Judgment

### Count I

Lazy Days' Motion for Reconsideration was granted on July 16, 2008 (Dkt. 88) for Count I of Plaintiffs' complaint, Breach of Implied Warranties under the UCC, for Plaintiffs' failure to state a cause of action upon which relief may be granted.

### Count II

Lazy Days' Motion for Reconsideration was granted on July 16, 2008 (Dkt. 88) for Count II of Plaintiffs' complaint, Breach of Express Warranties by Dealer under the UCC, for Plaintiffs failure to state a cause of action upon which relief may be granted.

### Count III

Lazy Days' Motion for Reconsideration was granted on July 16, 2008 (Dkt. 88) for Count III of Plaintiffs' complaint, Breach of Express Warranties by Dealer under Magnuson-Moss, for Plaintiffs' failure to state a cause of action upon which relief can be granted.

### Count IV

Lazy Days' Motion for Reconsideration was granted on July 16, 2008 (Dkt. 88) for

Count IV of Plaintiffs' complaint, Breach of Implied Warranties by Dealer under Magnuson-

Moss, for Plaintiffs' failure to state a cause of action upon which relief can be granted.

**Count V**

Plaintiffs assert a claim for revocation of acceptance against Lazy Days.  However,

Plaintiffs' opposition to the Lazy Days' Motion for Summary Judgment does not address Count

V, Revocation of Acceptance against Dealer.  Instead, Plaintiffs' opposition only includes

arguments for counts that have been previously granted in favor of Lazy Days in a prior Order.

However, in the context of an unopposed motion for summary judgment, "[a] district court

cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but,

rather, must consider the motion on the merits."  *Reese v. Herbert*, 527 F.3d. 1253, 1269 (11th

Cir. 2008).

Under Florida law, *Florida Statute § 672.608* provides the following provisions

regarding revocation of acceptance:

(1)     The buyer may revoke her or his acceptance of a lot or commercial unit
        whose nonconformity substantially impairs its value to her or him if she or
        he has accepted it:
        (a)     On the reasonable assumption that its nonconformity would be
                cured and it has not been seasonably cured: or
        (b)     Without discovery of such nonconformity if her or his acceptance
                was reasonably induced either by the difficulty of discovery before
                acceptance or by the seller's assurances.
(2)     Revocation of acceptance must occur within a reasonable time after the
        buyer discovers or should have discovered the ground for it and before
        any substantial change in condition of the goods which is not caused by
        their own defects.  It is not effective until the buyer notifies the seller of it.
(3)     A buyer who so revokes has the same rights and duties with regards to the
        goods involved as if she or he had rejected them.

However, a seller is allowed to disclaim or contractually limit a buyer or potential

buyer's right to revoke acceptance.  *Fla. UCC § 672.719(a).*  In moving for summary judgment

on Count V, Lazy Days argues that under paragraph eleven of Buyer's Orders, Plaintiff

surrendered the right to revoke acceptance. Paragraph eleven states:

> MANUFACTURERS WARRANTIES. MECHANICAL PROBLEMS MAY
> ARISE WITH ANY VEHICLE. I UNDERSTAND THAT THERE MAY BE
> WRITTEN WARRANTIES COVERING THE UNIT PURCHASE, OR ANY
> APPLIANCE(S) OR THE COMPONENT(S), SUCH AS THOSE WHICH
> HAVE BEEN PROVIDED BY THE MANUFACTURERS OF THE UNIT, THE
> APPLIANCE(S) OR THE COMPONENT(S). I UNDERSTAND THAT THE
> WARRANTY OR WARRANTIES I RECEIVED AT THE TIME OF SALE ARE
> MY EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS THAT I
> MIGHT HAVE WITH THE UNIT OR ANY APPLIANCE(S) OR
> COMPONENT(S). I AGREE THAT NO OTHER REMEDIES ARE
> AVAILABLE TO ME, INCLUDING BUT NOT LIMITED TO, REVOCATION
> OF ACCEPTANCE AND RESCISSION.

This Court held in a previous Order (Dkt. 88) that because the exclusion of the revocation of

acceptance within paragraph eleven is found under the title "Manufacturers Warranties" of the

Buyer's Orders, that the revocation of acceptance only refers to Defendant, Manufacturer, and

not Lazy Days, the Dealer. Accordingly, this Court found that Lazy Days "did not properly

modify or exclude revocation of acceptance so that Count V survives as an available remedy to

Plaintiffs, so long as they can establish that their revocation meets the terms set forth in

§ 672.608." Dkt. 88, *McKissic v. Country Coach, Inc.*, 2008 U.S. Dist. LEXIS 104147, at *20

(M.D. Fla. July 16, 2008).

Lazy Days further argues that because it disclaimed all warranties in paragraph nine of

the Buyer's Order, that Plaintiffs have no basis to make a revocation of acceptance claim.

"Revocation of acceptance is not available as a remedy for buyers where a vehicle dealer

effectively disclaims all warranties on the goods." *Ames v. Winnegabo Indus., Inc*., 2005 WL

2614614, at *4-5 (M.D. Fla. Oct. 14, 2005). "Revocation of acceptance is not available . . .

where a seller disclaims all warranties." *Drew v. Boaters Landing Inc. of Ft. Myers*, 2007 U.S.

Dist. LEXIS 67676, at *7 (M.D. Fla. Sept. 13, 2007). *See e.g. Frank Griffin Volkswagen v.*

*Smith*, 610 So.2d. 597, 599 (Fla. 1st DCA 1992). This Court held in a previous Order that Lazy Days' "disclaimers are conspicuous" and that "Lazy Days has demonstrated that it has disclaimed all warranties, express and implied." Dkt. 88, *McKissic*, 2008 U.S. Dist. LEXIS 104147, at *11. Specifically, this Court dismissed Counts I-IV of the Plaintiff's complaint alleging breach of express and implied warranties by Defendant Dealer under Magnuson-Moss and the UCC (Dkt. 88).

In further supporting this argument, Lazy Days relies on *Chmura v. Monaco Coach Corporation* to highlight this district's interpretation of the identical paragraph nine and paragraph eleven provisions as are present in the instant case's Buyer's Order. Case No. 8:04-cv-2054-T-24MAP, 2006 U.S. Dist. LEXIS 11217, at *9 (M.D. Fla. Mar. 20, 2006); 2006 WL 709325, at *2-4. In reviewing Lazy Days' disclaiming language within paragraph nine and eleven, the *Chmura* court reasoned:

> Since Lazy Days has shown that the disclaimers are conspicuous, Lazy Days has shown that it has disclaimed all warranties, express and implied. As such, Lazy Days has shown that there is no basis for Plaintiff to revoke his acceptance, because Plaintiff has not shown a breach of a contractual obligation by Lazy Days (since there were no warranties given by Lazy Days that Lazy Days could have breached). 2006 U.S. Dist. LEXIS 11217, at *10-11.

Similarly, in the instant case Plaintiffs executed Lazy Days' Buyer's Order to purchase the subject RV. With the language of paragraph nine previously determined by this Court to conspicuously disclaim any Lazy Days express or implied warranties, Lazy Days cannot breach a contractual obligation that does not exist. Consequently, there cannot be any breach by Lazy Days that could trigger Plaintiffs' ability to revoke acceptance.

Lazy Days further argues that Count V is time-barred and also asserts that Count V is legally deficient due to Plaintiffs' lack of expert witness and admissible proof of cognizable damages. However, due to the Court's above analysis, such issues will not be addressed.

This Court is persuaded that Lazy Days has demonstrated that Count V, Revocation of Acceptance by Dealer, is not available to Plaintiffs in this case. Accordingly, Lazy Days' Motion for Summary Judgment is granted as to Count V for failure to state a cause of action against Lazy Days as a matter of law.

## Count VI

In the Court's Order on Motion to Dismiss (Dkt. 47), the Court agreed with Lazy Days that Count VI, Deceptive and Unfair Trade Practices by Dealer, should be granted in favor of Lazy Days because such action is time-barred by the applicable statute of limitations. However, the Court's Order on Defendants Motion to Dismiss incorrectly stated Count VI as denied when it should have been granted. Accordingly, Dealer's Motion for Reconsideration was granted on July 16, 2008 (Dkt. 88) for Count VI of Plaintiffs' complaint, Deceptive and Unfair Trade Practices by Dealer. The Court granted judgment on Count VI in favor of Lazy Days to amend the scrivener's error that occurred in the Court's previous Order on Motion to Dismiss on March 3, 2008 (Dkt. 47).

## IV. Defendant Manufacturer's Motion for Summary Judgment

## Count VII

There was a scrivener's error in the Court's Order on Motion to Dismiss on March 3, 2008 (Dkt. 47) when the Court granted in part and denied in part Defendants' Motion to Dismiss. Due to this scrivener's error, Defendant Manufacturer's Motion to Dismiss Plaintiffs' claims for Breach of Express Warranty by Manufacturer under the UCC, Count VII, was incorrectly stated as GRANTED while in fact Count VII was DENIED in the Court's Order (Dkt. 47). Accordingly, dismissal of Count VII should have been denied contrary to the language of the Order. Thus, Defendant, Manufacturer's, Motion to Dismiss Plaintiffs' claims for Breach of

Express Warranty by Manufacturer under the UCC, Count VII, is DENIED nunc pro tunc to the date of the order.

Plaintiffs allege that Country Coach breached an express warranty that the motor home purchased by the Plaintiffs was fit for the ordinary purposes of safe, reliable, and attractive transportation; was of good, sound, and merchantable quality; free from defective parts and workmanship; engineered and designed as to function without unreasonable maintenance and repairs; that in the event that the RV was not free from such defects, Country Coach would repair and replace such defects without costs to the Plaintiffs; and that any defects would be cured within a reasonable time. The Plaintiffs further allege that Country Coach breached said warranty since the Plaintiffs have had repeated problems with water leaks and mold. The Plaintiffs claim that Country Coach has been given a reasonable opportunity to cure these defects, but Country Coach has been unable and/or refused to do so within a reasonable time and without costs to Plaintiff.

## A. Timeliness

"Claims must be filed before the running of the statutes of limitation or the claims are barred as a matter of law." *Senger Bros. Nursery, Inc. v. E.I. Dupont de Nemours & Co.*, 184 F.R.D. 674, 680 (M.D. Fla. Feb. 5, 1999), 1999 U.S. Dist. LEXIS 1586. Applicable Florida law provides a five-year statute of limitations to file a "legal or equitable action on a contract, obligation, or liability founded on a written instrument." *Fla. Stat. § 92.11(2)(b)*; *see Senger Bros. Nursery*, 184 F.R.D. at 683. *Florida Statute § 672.313* codifies *UCC § 2-313* and governs express warranties under Florida law as follows:

> (1) Express warranties by the seller are created as follows:
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that the seller have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

This Florida codification is an exact reproduction of *UCC § 2-313* with the exception that this Florida version has clarified one word by replacing the word "he" in *UCC § 2-313(2)* with "seller."

"The statute of limitations for causes of actions based on a breach of an express warranty begins to run when plaintiff discovers, or should have discovered, the breach of the express warranty." *First Fed. Sav. & Loan Ass'n. v. Dade Fed. Sav. & Loan Assn'n*, 403 So. 2d 1097, 1101 (Fla. 5th DCA 1981). "In a breach of warranty action, the statute of limitations begins to run when the defect giving rise to the cause of action is discovered or should have been discovered." *Florida Power & Light Co. v. Allis-Chalmers Corp.*, 1989 U.S. Dist. LEXIS 16640, at *14 (S.D. Fla. March 21, 1989). Defendant, Manufacturer, acknowledges that Florida's five-year statute of limitations period begins when the breach is discovered or should have been discovered, but also sets forth that such statute of limitations cannot begin to run past the explicit time period in which the express warranty expires. Accordingly, Defendant, Manufacturer, argues that the statute of limitations started to run (at the latest) when the Country Coach Limited Warranty expired on April 24, 2002, twelve months from the date of the RV's first retail purchase on April 24, 2001. Under this argument, Plaintiffs had five years from April 24, 2002, or until April 24, 2007, in which to file a breach of warranty claim. Thus, because

Plaintiffs filed this action on August 10, 2007, Defendant Manufacturer argues that Plaintiffs were nearly five months past the applicable statute of limitations in filing the complaint.

Plaintiffs argue that they became aware of the failure to adequately repair the RV in 2003 upon noticing the mold caused by condensation in the vehicle and that this is the time of the breach to begin the running of the statute. Plaintiffs further argue that their complaint filing date of August 10, 2007, is well within the five-year period of the applicable period under *Florida Statute § 92.11(2)(b)*. Although Plaintiffs' Count V complaint is based upon both a defect of the RV, as well as the Manufacturer's failure to cure such defect in a reasonable time, Plaintiffs' response to Defendant, Manufacturer's, statute of limitations argument is premised solely upon the Defendant, Manufacturer's, failure to repair or replace a defect as warranted for twelve months in the COUNTRY COACH HOUSE/COACH LIMITED WARRANTY.

Thus, the issue before the Court regarding timeliness is whether the applicable statute of limitations for a breach of express warranty may begin after the COUNTRY COACH HOUSE/COACH LIMITED WARRANTY expired on April 24, 2002. For the following reasons, this Court finds that it cannot.

Although the applicable statute of limitations before the Court is embodied within *Florida Statute § 95.11(b)(2)*, because this Florida Statute lacks express judicial precedent relating to its interpretation under the facts at hand, this Court looks to *Dubin v. Dow Corning Corp.,* for a similar interpretation of *Florida Statute § 95.11.* 478 So. 2d 71 (Fla. 2d DCA 1985). *Dubin* involves the four-year statute of limitations embodied in Florida Statute § 95.11(3)(c) which governs improvements to real property. *Id.* at 72. In *Dubin*, a builder entered into a written contract to construct an office for the Plaintiff occupant and allegedly agreed to a five-year warranty. *Id.* Over the course of several years of occupancy by the Plaintiff, the roof

leaked and was subsequently repaired numerous times. *Id.* In determining when the four-year statute of limitations of *Florida Statute § 95.11(3)(c)* began to run, the court held that "a four-year statute of limitations could commence *at any time up to the expiration of the warranty period*." *Id.* at 73 (emphasis added). *Dubin* further acknowledges that within this context, "the statute of limitations begins to run on a warranty when the contract is breached, and the breach occurs when the defect is or should be discovered." *Id.* (citing *AB CTC v. Morejon*, 324 So.2d 625, 628 (Fla. 1975)).

Although *Florida Statute § 95.11(2)(b)* extends to a five-year limitation regarding liability founded on a written instrument (rather than the four years § 95.11(3)(c) relating to improvements of real property), both of these Florida statutes operate on the same rule of law for a breach of warranty claim. As stated above, "the statute of limitations begins to run on a warranty when the contract is breached, and the breach occurs when the defect is or should be discovered." *Id.* at 73 (citing *AB CTC*, 324 So.2d at 628 (Fla. 1975)). Accordingly, in light of the holding in *Dubin* that limits such a rule to the "expiration of the warranty period," the five-year statute in *Florida Statute § 95.11(2)(b)* should similarly be subjected to the requirement that the statute begins to run (at the latest) at the expiration of a warranty period. *Id.* at 73.

Within this district, *Chmura* provides valuable insight into the very issue before the Court. 2006 U.S. Dist. LEXIS 11217, at *14. In referencing the five-year statute of limitations within *Florida Statute § 95.11(2)(b)*, the *Chmura* court implies that such five-year statute begins to run at the expiration of the limited warranty. *Id.* Although *Chmura* is based upon a finding that a manufacturer may not limit the statute of limitations period to less than five years under *Florida Statute § 95.030*, the court's analysis provides highly relevant to the issue at hand. From the reasoning of *Chmura*, by specifically setting forth the timeline between the "expiration of the

limited warranty" and the date of filing of [a] lawsuit, it appears that the court views "the

expiration of [a] limited warranty" as the day the five-year statute begins to run. *Id.* at *14-15.

*Chmura* states:

> The warranty period was twelve months from the purchase date or the first 24,000 miles of use, whichever came first. (Exhibit 23 to Plaintiff's depo). Plaintiff purchased the vehicle on July 24, 2001, so *the twelve month period ended July 24, 2002*; however, [Defendant] later added six months onto the limited warranty. (Plaintiff's depo, p. 176). *Plaintiff did not file suit against Monaco until July 28, 2004–more than twelve months after the expiration of the limited warranty.*
>
> Plaintiff responds that Florida does not allow for a reduction in the limitations period for filing breach of express written warranty claims, and as such, Monaco's shortened limitations period is void. Plaintiff bases his argument on Florida Statute § 95.03, which provides that "any provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void." Furthermore, *Florida Statute § 95.11(2)(b) provides that an action on a contract founded on a written instrument must be brought within five years. Plaintiff has filed suit within the statutory period provided by Florida Statute § 95.11*, and [Defendant's] attempt to shorten the limitations period is void.

Id. at *14-15 (emphasis added). Upon holding that the Defendant, Manufacturer's,

attempt to "shorten the limitations period is void," pursuant to Florida Statute § 95.03, the court

importantly acknowledges that "*[p]laintiff has filed suit within the statutory period provided by

Florida Statute § 95.11.*" *Id.* This statement is crucial to the case at hand as it raises the

presumption that the five-year statute of limitations of *Florida Statute § 95.11(2)(b)* begins to

run upon the expiration of the warranty. It appears that the date the *Chmura* court is referencing

in calculating where the statute begins to run on the Plaintiff is July 24, 2002, the "expiration of

the limited warranty." *Id.* Under the facts of *Chmura*, the court would be correct in reasoning

that the complaint was timely as the Plaintiff's July 28, 2004 complaint is only two years from

the expiration of the limited warranty on July 24, 2002, and therefore within the five-year limit

of *Florida Statute § 95.11(2)(b)*. In light of *Dubin*, this reasoning by the *Chmura* court implies a

uniform judicial interpretation that for a breach of express warranty claim in Florida, the four-year statute of § 95.11(3)(b) and the five-year statute of § 95.11(2)(b) both begin to run upon the expiration of the express warranty at the latest. *Dubin*, 478 So. 2d 71; *Chmura*, 2006 U.S. Dist. LEXIS 11217.

This Court holds that the five-year statute of limitations set forth in *Florida Statute § 95.11(2)(b)* begins to run for a claim of breach of express warranty when the breach giving rise to the cause of action is discovered or should have been discovered, *or* when such warranty expires, whichever occurs first. Under the express warranty at issue, the applicable five-year statute of limitations cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage beyond this date, even if he attempted to repair the RV after the expiration of the warranty. *See Pinnacle Point Community Ass'n v. Orenstein*, 1987 U.S. Dist. LEXIS 15143, at *42 (N.D. Fla. August 17, 1987) (explaining that "the mere fact that some corrective work may have been promised or discussed, or that there had been 'continuous treatment' in attempting to repair the original work, does not alter or toll the statute of limitations"). The STRUCTURAL WARRANTY section of the COUNTRY COACH HOUSE/COACH LIMITED WARRANTY clearly states that "[w]arranty repairs do not extend the warranty term on the house/coach portion of the motor-home or for any specific part, component, or system." Plaintiffs claim that the statute began to run in 2003, after the expiration of the express warranty, when the Defendant, Manufacturer, allegedly failed to adequately repair the RV is without merit.

Within this case, it is undisputed that the twelve month COUNTRY COACH HOUSE/COACH LIMITED WARRANTY started on April 24, 2001, when the RV was purchased new by a different owner. Accordingly, such twelve month warranty ended on April

24, 2002, thirty-nine days after Plaintiffs had purchased the RV used from Lazy Days on March 17, 2002.  From the time of discovery of a breach of express warranty, or upon the warranty's expiration date on August 24, 2002 at the latest, Plaintiffs had five years under *Florida Statute § 95.11(2)(b)* to file a claim of breach of express warranty by Manufacturer under the UCC. Regardless of whether Plaintiffs are filing for breach of express warranty because of a defect in the RV, or for breach of express warranty because the Defendant, Manufacturer, failed to repair or replace the defect within a reasonable time, Plaintiffs failed to meet the deadline of April 24, 2007, by filing four months late on August 10, 2007, and are, thus, time-barred in filing this claim.  Accordingly, Country Coach's Motion for Summary Judgment is granted as to Count VII as a matter of law.

Defendant Manufacturer further argues that Count VII is legally deficient by failing to allege a covered "defect" under the terms of the warranty, and also asserts that Plaintiffs have no proof of cognizable "damages" as required by such a claim.  However, due to the Court's above analysis, such issues will not be addressed.

## Count VIII

There was a scrivener's error in the Court's Order on Motion to Dismiss on March 3, 2008 (Dkt. 47) when the Court granted in part and denied in part Defendants' Motion to Dismiss. Consistent with the analysis set forth in the Court's Order (Dkt. 47), Defendants' Motion to Dismiss Plaintiffs' claims for Breach of Implied Warranties by Manufacturer under the UCC, Count VIII, is **GRANTED with prejudice**.

## Count IX

As stated previously by this Court (Dkt. 88), remedies under Magnuson-Moss, 15 U.S.C. § 2304, are only applicable to "full" warranties.  *Lambert v. Monaco*, 2005 WL 1227485, at *4

(M.D. Fla. May 24, 2005).  The issue of summary judgment to Manufacturer for Count IX now turns on whether the Manufacturer provided a "full" or "limited" warranty to Plaintiffs under Magnuson-Moss.

This Court now adopts the explanation of "incidental" and "consequential" damages as explained in a previous Order (Dkt. 88).  15 U.S.C. § 2304(3), in its plain language, refers to "consequential damages" in that they may not be excluded or limited unless such is on the face of the warranty.  This section of the Code does not mention "incidental" damages.  Therefore, only limitations as to "consequential" damages must appear on the face of the warranty to satisfy Magnuson-Moss.  *Uniform Commercial Code § 2-715* defines these different types of damages:

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any reasonable expense incident to the delay or other breach.

> (2) Consequential damages resulting from the seller's breach include
>     (a)    any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>     (b)    injury to person or property proximately resulting from any breach of warranty.

The "consequential" damages provision of the Manufacturer's warranty is found on the back side of the warranty and states:

> CONSEQUENTIAL DAMAGES
> Without regard to the alleged defect, Country Coach does not assume under any circumstances any responsibility for any consequential or incidental damages resulting from a defect in the motorhome, including without limitation, loss of time, loss of revenue, inconvenience expense for fuel, telephone or other communication charges, towing or service calls, rental vehicles, travel, meals, lodging, loss or damage to personal property, personal injury or emotional distress.  Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation may not apply to you.

This is the clause that needed to appear on the face of the Manufacturer's warranty. Because this clause appears on the back side of the warranty, it does not meet the requirements of a "full" warranty embodied within 15 U.S.C. § 2304(3). Thus such warranty is a "limited" warranty under Magnuson-Moss.

Within the United States Code, 15 U.S.C. § 2303(a) states that written warranties shall be conspicuously designated as a "full warranty" or a "limited warranty." Manufacturer's warranty facially states in the document title line: "COUNTRY COACH HOUSE/COACH LIMITED WARRANTY." (Dkt. 86, Ex. 8). Furthermore, in the byline under this title reads: "As defined by Magnuson-Moss Warranty-Federal Trade Commission Improvement Act" (Dkt. 86, Ex. 8). Manufacturer's warranty has been acknowledged by both parties as a "limited warranty" and this fact is undisputed (Dkt. 93, P. 4, No. 5, L. 21-22). As stated previously, a "limited" warranty is not subject to § 2304 or the Magnuson-Moss Act's substantive remedies. *Lambert*, 2005 WL 1227485, at *4 (citing *Schimmer v. Jaguar Cars, Inc.*, 284 F.3d 402, 405 (7th Cir. 2004)).

Therefore, recovery to Plaintiffs is not available under the Magnuson-Moss Act (§ 2304) because Manufacturer only provided a "limited" warranty to Plaintiffs. *See Bailey v. Monaco Coach Corp.*, 350 F. Spp. 2d 1036, 1042 (N.D. Ga. 2004), aff'd 168 Fed. Appx. 893 (11th Cir. 2006); *Henson v. Allison Transmission, et al.*, 2008 U.S. Dist. LEXIS 6112, at *10-11 (M.D. Fla. Jan. 28, 2008). Accordingly, Country Coach's Motion for Summary Judgment is granted as to Count IX as a matter of law.

## Count X

Defendants' Motion to Dismiss was granted in favor of Manufacturer on March 3, 2008 (Dkt. 47) for Count X of Plaintiffs' complaint, Breach of Implied Warranties by Manufacturer under the Magnuson-Moss Warranty Act, for reasons of Plaintiffs' failure to allege facts that in

any conceivable way could establish privity with Manufacturer as required to establish an implied warranty between the Manufacturer and the Plaintiff buyer. Accordingly, it is

**ORDERED** that Defendants' Objections be **SUSTAINED**, Defendants' Motions to Strike be **GRANTED**, Manufacturer's Motion to Dismiss (Dkt. 13) be clarified to show it was granted as to Counts VIII and X, Lazy Days' Motion for Summary Judgment be **GRANTED** as to Count V, and Manufacturer's Motion for Summary Judgment be **GRANTED** as to Counts VII and IX. The Clerk of Court is directed to enter judgment for the defendants and close this case.

This Court reserves jurisdiction to award any costs and attorney's fees available to Defendants under Florida law, including by operation of Florida Statute § 768.79. If the attorneys do not arrive at an agreement within thirty days, an appropriately supported motion may be filed with this Court.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 27th day of February, 2009.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record